IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENAN METZGER,** and **ALLISON METZGER,** | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case: ) **JURY TRIAL DEMANDED** |
| **BANK OF AMERICA, NA,** | ) ) ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW the Plaintiffs, KENAN METZGER ("Kenan") and ALLISON METZGER ("Allison"), (collectively "Plaintiffs"), and for their Complaint against the Defendant, BANK OF AMERICA, N.A. ("BOA"), Plaintiffs allege as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information and the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* (KCPA)

### JURISDICTION & VENUE

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a) because this is an action to recover damages or secure equitable or other

relief under Acts of Congress, more specifically 15 U.S.C. § 1681 and 28 U.S.C. §§ 2201-2202.

3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367 because the state law claims share a common nucleus of operative facts with the questions of federal law.

4. Venue in this District is proper in that Plaintiffs reside here, Defendant transacts business here and the conduct complained of occurred here.

## PARTIES

5. Plaintiffs are natural persons and residents of Kansas.

6. The debt relevant to this dispute was incurred in the course of attempts at and actual acquisition of property or services for personal, family or household use, so Plaintiff is a "consumer" as that term is defined the FCRA at 15 U.S.C. § 1681a(c).

7. BOA is a corporation that regularly transacts business in Kansas.

8. BOA regularly and in the course of business furnishes information to various consumer reporting agencies regarding BOA's transactions with consumers, and is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b).

## STATEMENT OF FACTS

9. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

BOA Canceled Plaintiffs' Alleged Debts and Forced Plaintiffs to Pay Taxes

10. Sometime prior to 2014, Plaintiffs opened two accounts relevant to this litigation with BOA. The first was an account for both Plaintiffs starting with 7497 (the

2

"Joint Account"), and the second was an account for Allison ending in 5235 ("Allison's Account")(collectively the "Accounts").

11. In 2012, BOA accepted settlement on the Joint Account for less than the full balance, reporting to Plaintiffs and the IRS that BoA forgave the remaining balance.

12. Sometime prior to 2014, BOA began reporting each of the Accounts as having a balance due and past due balance, reporting the same to the CRAs.

13. On or about November 28, 2014, BOA forgave the balance on Allison's Account and decided to stop collection efforts, pursuant to BOA's internal policies or decisions.

14. In early 2015, BOA sent Plaintiffs and the IRS notice that BOA forgive the balance on Allison's Account, just as BOA had reported forgiving the remaining balance on the Joint Account.

15. In reasonable, good faith reliance on BOA's representations, Plaintiffs paid taxes for Income from Discharge of Indebtedness based on the amounts forgiven by BOA on the Accounts.

16. For reasons that are not entirely clear at this time, BOA changed the Joint Account number from a number starting with 7497 to a number starting with 5490.

17. However, BOA continued to report the Accounts to the CRAs as still having a balance due and a past due balance, despite reporting to Plaintiff and the IRS that the Account was canceled.

Plaintiffs' Efforts to Resolve the Inaccurate Reporting

18. After receiving the report from BOA and paying taxes, Plaintiffs sought to refinance loans and obtain new credit, causing Plaintiffs to obtain copies of their credit reports and thereby become aware of BOA's inconsistent reporting of the Accounts.

19. Plaintiffs were alarmed and angered to discover that BOA was continuing to report the Accounts as having a balance due and a past due balance.

20. Plaintiffs were further alarmed and angered to discover that the Joint Account was reporting twice under each number.

21. BOA was reporting the Joint Account as having no balance or past due balance under the 7497 number, but having a balance due under the 5490 number.

22. Plaintiffs sent multiple dispute to the CRAs throughout 2016, disputing BOA's reporting a balance due on the Accounts.

23. Pursuant to § 1681i of the FCRA, the CRAs investigated the Account for accuracy.

24. As part of their investigation of Plaintiff's written dispute, the CRAs sent notice of Plaintiff's dispute to BOA.

25. Pursuant to § 1681s-2(b) of the FCRA, BOA was then obligated to investigate the disputed information for accuracy and report the results to the CRAs.

26. Pursuant to § 1681s-2(b) of the FCRA, BOA was obligated to update and correct its reporting for any furnished information was inaccurate regarding the Accounts to all CRAs to whom BOA had previously reported the Accounts.

27. On information and belief, BOA sent correspondence to the CRAs with whom Plaintiff disputed the Accounts indicating Plaintiffs still owed a balance and that the Accounts were reporting correctly.

28. In response to Plaintiffs' written dispute, the CRAs reported to Plaintiffs that the Accounts had been either verified or updated by BOA to still include balances due and past due balances.

29. BOA is a lender who routinely and as a matter of policy uses consumer credit reports to determine whether to lend money or extend credit to consumers.

30. BOA examines credit scores, debt to income ratios and other information from consumer credit reports in making these determinations.

31. BOA knows that reporting a balance due and past due balance lowers consumers' credit scores, raises their debt to income ration and will be viewed negatively by lenders considering extending credit or modifying terms of credit agreements.

32. BOA indirectly demanded payment on the Accounts from Plaintiffs, by continuing to report a balance due and past due balance in a way that would damage Plaintiffs' reputation for creditworthiness, which created pressure on Plaintiffs to pay the alleged balances on the Accounts, regardless of whether they actually owed them or not.

Efforts of Plaintiffs' attorneys

33. In addition to Plaintiffs' CRA disputes, Plaintiffs' attorneys sent letters to BOA requesting validation of the amounts BOA stated were due.

34. On or about July 8, 2016 BOA sent Plaintiffs' attorney a letter stating that a balance of $10,840.51 was due on the Joint Account.

35. In addition to BOA's attempts to pressure Plaintiffs to pay a debt they did not owe through reporting a balance to the CRAs, BOA also attempted to collect on the Joint Account by sending Plaintiffs' attorney a letter stating a balance was due.

36. BOA continued to attempt to collect debts that BOA canceled, informed Plaintiffs had been canceled, and forced Plaintiffs to pay taxes on in reasonable, good-faith reliance on BOA's representations.

## CLAIMS FOR RELIEF

**COUNT I: Negligent or Willful Violations of 15 U.S.C. § 1681*s-2* by BOA**

37. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

<u>BOA Knowingly Reported Factually and Legally Inaccurate Information</u>

38. BOA is a furnisher and may not furnish any information relating to a consumer to any consumer reporting agency if BOA knows or has reasonable cause to believe that the information is inaccurate. 15 U.S.C. § 1681s-2.

39. BOA received notice that Plaintiffs disputed the accuracy of BOA's reporting after BOA canceled the Accounts from Plaintiffs' disputes through the CRAs.

40. Pursuant to the FCRA, 15 U.S.C. § 1681*s-2*(b), BOA must perform a reasonable investigation of information furnished to CRAs when a Consumer disputes the accuracy with the CRAs.

41. BOA reasonably should have investigated to discover whether BOA knew or had good cause to believe the information furnished regarding the Accounts was inaccurate because BOA was legally obligated not to report such information.

6

42. BOA previously self-identified and reported to both Plaintiff and the IRS that BOA canceled the Accounts, without any dispute or notice from Plaintiffs.

43. An unreasonable, cursory review of Plaintiffs' dispute and BOA's records would have revealed good cause to believe the reporting was inaccurate when it revealed a record of an "identifiable event" where BOA canceled the Accounts and sent a 1099-C to Plaintiffs and the IRS.

44. A reasonable investigation into Plaintiffs' dispute would have reviewed BOA's 1099-Cs to the IRS and Plaintiffs, BOA's internal records related to filing the 1099-Cs, the financial benefit conferred to BOA by filing a 1099-Cs, and the same BOA policy and procedure BOA used to identify the Accounts as canceled in order to comply with IRS regulations.

45. BOA could keep cross-references or other notations in BOA's records to ensure that BOA is reporting consistently to the IRS and the CRAs.

46. On information and belief, BOA has no policy or procedure for cross-checking disputed accounts with other records to ensure the reviewed records are accurate.

47. BOA failed to perform a reasonable investigation because BOA keeps separate records of "identifiable events" from the record BOA examines for FCRA disputes, which makes it structurally impossible for BOA to conduct a reasonable investigation.

48. BOA has been sued many times for reporting a balance due after reporting an account canceled to the IRS and a Consumer, which puts BOA on notice that their

7

records are incomplete and their investigations are not covering all relevant information.

49. BOA's failure to perform a reasonable investigation was willful, wanton and malicious because BOA either intentionally chose to ignore information or with callous disregard for the rights of consumers, like Plaintiffs, chose not to repair BOA's record keeping despite knowing that failure to do so was creating harm to consumers.

50. BOA would have known its reporting was not accurate if BOA had performed a reasonable investigation in good faith.

51. A reasonable, good faith investigation would have resulted in BOA changing their representation of the Account.

52. BOA clearly did not conduct a reasonable investigation in good faith because BOA's continuing "validation" of its reporting must either be the result of failure to review BOA's records or a mere pretextual review and "validation" regardless of actual merit.

53. BOA failed to perform a reasonable, good-faith investigation and then continued reporting a balance due and past due balance on the Account to the CRAs.

54. By failing to conduct a reasonable investigation into Plaintiffs' disputes, BOA negligently violated § 1681*s-2*(b)(1).

55. In the alternative, by willfully conducting a pretextual or less than a reasonable investigation into Plaintiffs' disputes, BOA willfully violated § 1681*s-2*(b)(1).

56. As a direct and proximate result of BOA's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiffs have suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit

8

opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorney's fees and the costs of this action, pursuant to 15 U.S.C. § 1681*o*.

57. BOA's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiffs and other consumers, and the injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against BOA, pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE** Plaintiffs pray for judgment on this ***Claim for Relief*** in their favor and against BOA, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorney's fees and costs; and

(e) Any further relief as deemed appropriate and just by this Honorable Court.

### COUNT II KANSAS CONSUMER PROTECTION ACT
**Deceptive and Unconscionable Acts in Violation of K.S.A. 50-623 *et seq.* by BOA**

58. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

59. Plaintiffs are a husband and wife, who sought to acquire the services of BOA for personal, family and household purposes by opening the Accounts with BOA and therefore are a consumer as defined by K.S.A. § 50-624(b) of the KCPA.

60. BOA in the ordinary course of business, solicits, engages in or enforces consumer transactions and is therefore a supplier of consumer products as defined by K.S.A. § 50-624 and is subject to the requirements and provisions of the KCPA.

61. The relevant transaction(s) occurred in the state of Kansas between a consumer and a supplier and so is a consumer transaction as defined by K.S.A. § 50-624(c).

62. K.S.A. § 50-626 provides that "No supplier shall engage in any deceptive act or practice in connection with a consumer transaction."

63. The above-described actions and representations of BOA are deceptive as described by K.S.A. § 50-626(b)(2) which prohibits the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact, in this case specifically including whether BOA retained a legal right to demand payment from Plaintiff.

64. BOA's claims and reports that Plaintiffs are deceptive under K.S.A. §50-626 because BOA falsely and deceptively claimed that Plaintiffs owed BOA money when Plaintiffs did not.

65. K.S.A. § 50-627 provides that "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after

10

the transaction."

66. Unconscionability is a question for the Court, who is directed by K.S.A. § 50-627 to consider "circumstances of which the supplier knew or had reason to know, such as, but not limited to:

> (1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests...
>
> (6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

67. BOA's acts and omissions placed pressure on Plaintiffs to pay on the Accounts after BOA settled or canceled them, as described above.

68. BOA continued to attempt to collect on the Accounts when BOA had no legal right to collect or was equitably estopped from collecting.

69. BOA also continued to attempt to collect on the Accounts after the IRS administratively adjudicated that Plaintiffs were no longer obligated to repay the Accounts based on BOA's representations to the IRS.

70. However, the IRS does not have jurisdiction over disputes between BOA and Plaintiffs, so the IRS has no authority to penalize BOA for unjustly attempting to collect on the Accounts.

71. BOA has a long history dealing with credit reports, CRAs and consumers.

72. BOA is aware that Plaintiff is also unable and/or unlikely to obtain relief through the CRAs by disputing BOA's reporting, so long as BOA continues to "validate" and/or "update" BOA's reporting of the Accounts as still owing.

73. BOA has previously litigated, arguing that it has a right to report a debt canceled to the IRS but still continue collection efforts by reporting a balance due to the CRAs

74. BOA took advantage of Plaintiffs' inability to seek relief through the IRS or the CRAs to attempt a collect a debt that BOA is legally and/or equitably barred from collecting.

75. BOA's acts, described above, are unconscionable under K.S.A. §50-627 because they took advantage of Plaintiffs' inability to protect themselves and made statements of opinion that BOA knew or reasonably should have known that Plaintiffs would rely on to their detriment.

BOA's acts were willful

76. On information and belief, BOA's acts and omissions described above were BOA's standard policy and/or procedures.

77. BOA's acts and omissions described above were identical to and/or substantively similar to BOA's treatment of significant numbers of consumers similarly situated to Plaintiff, including many in Kansas.

78. BOA's acts and omissions described above were willful and part of a pattern of deceptive and unconscionable acts and practices.

79. As a result of BOA's acts and omissions described above, Plaintiff suffered damage, including but not limited to: loss of credit; loss of the ability to purchase and benefit from credit; increased cost of existing credit; loss from expenditure of significant time energy and effort; out of pocket costs; considerable distress, mental anguish, worry,

frustration, fear and embarrassment.

80. BOA's unlawful acts complained of above are the result of a general policy of BOA's, that affect many consumers on a daily basis, not just Plaintiff.

81. BOA's unlawful acts complained of above predate BOA's application of these policies and procedures to Plaintiff's Account.

82. On information and belief, the affected consumers will not be identifiable due to privacy laws and restrictions placed on BOA.

83. BOA's unlawful acts, complained of above, were willful, wanton and malicious.

Repeated Violations

84. BOA's unlawful acts complained of above continues and repeats the pressure on Plaintiffs and all affected consumers to repay a canceled debt each day the policy is in place, even where BOA makes no verbal or written demand for payment. Each day these acts occur or policies are in place is a separate violation of the KCPA pursuant to K.S.A. 50-636(d) because they are ongoing in nature and not related to a specific transaction.

85. In the alternative, each distinct act or omission by BOA constitutes a separate violation of the KCPA.

86. Plaintiffs are an aggrieved consumer who have been harmed, incurred actual damages, and incurred attorney's fees as a direct and proximate result of BOA's deceptive and unconscionable acts.

87. Pursuant to K.S.A. § 50-363, Plaintiffs are entitled to the greater of actual

damages or statutory damages in a sum set by the Court of not more than $10,000 for each violation of the KCPA.

**WHEREFORE** Plaintiffs pray for judgment on this *Claim for Relief* in their favor and against BOA, and for the following relief:

(a) Actual damages sustained, or in the alternative Statutory damages for each violation of the KCPA; and

(b) Reasonable attorney's fees and costs; and

(c) Any further relief as deemed appropriate and just by this Honorable Court.

**COUNT III: Declaratory Relief that BOA Waived the Right to Collect the Account or is Equitably Estopped from Asserting that Right**

88. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

89. In the alternative that the Court or Jury find no compensable damages, the Court has authority under The Declaratory Judgment Act, 28 U.S.C. § 2201 to declare the rights and legal relations of any interested party seeking such a declaration.

90. An actual controversy exists between Plaintiffs and BOA as to the specific rights and relations of the parties as it touches on Plaintiffs' duties to repay and BOA's rights to demand payment for the Accounts that are the central focus of this case.

91. The dispute between the parties is a dispute about contractual rights.

92. Contractual rights of parties are determined according to state and not federal law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)(and progeny).

BOA Waived it's right to collect the Account

14

93. Wavier occurs when a party to a contract voluntarily and intentionally renounces a known right or has taken action that is contrary to that right. *Steckline Comm. V. Journal Broadcast Group,* 388 P.3d 84, 91 (Kan. 2017).

94. The Accounts were clearly contracts for credit between Plaintiffs and BoA.

95. BOA had a contractual right to collect an amount due on the Account.

96. Cancellation of debt is taxed under the theory that the debtor has realized an accession to wealth because they have zero liability to repay a debt. *United States v. Kirby Lumber Co.,* 284 U.S. 1 (1931); 26 U.S.C. 61(a)(12)(using the term "discharge.")

97. A debt is only "canceled" when it becomes clear that a debt will "[n]ever have to be paid." *Cozzi v. Comm'r,* 88 T.C. 435, 441 (1987).

98. By reporting the Account as "canceled" to the IRS, BOA declared that the Account would "never have to be paid."

99. BOA waived any right to collect on the Account when, through the acts and omissions described above, BOA voluntarily renounced its right to collect and took actions contrary to that right.

<u>BOA is equitably estopped from asserting the right to collect the Account</u>

100. Equitable estoppel "is a judicial doctrine sounding in equity that effectively draws the sting of an existing legal right by preventing its enforcement." *Steckline,* 388 P. 3d at 91-92.

101. "A party may assert equitable estoppel to prevent a party from asserting a right where the offending party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain

facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 927, 157 P.3d 1109 (2007).

102. BOA's acts and omissions alleged above led Plaintiffs to believe that they no longer had any liability to repay the Accounts.

103. Plaintiffs, in good faith reliance on BOA's representations and under threat of sanction and penalty from the IRS relied on BOA's representations, reported receiving income from the cancellation of debt and paid taxes.

104. The IRS has already administratively adjudicated that BOA waived any right to collect on the Accounts as a basis for assessing a tax against Plaintiffs.

105. Equitably, BOA can no longer claim a right to collect on the Accounts because this would prejudice Plaintiffs in that the IRS has already administratively adjudicated that the Accounts are canceled and BOA would be seeking an inconsistent adjudication that harms Plaintiffs after BOA had an opportunity to "correct" its reporting but remained silent.

**WHEREFORE,** Plaintiffs pray for judgment on this *Claim for Relief* in their favor and against BOA, and for Declaratory relief declaring that BOA waived the right to collect the Accounts, or in the alternative is equitably estopped from asserting that Plaintiffs owe BOA any amount on the Accounts.

## **DESIGNATION OF PLACED OF TRIAL**

Plaintiff requests that trial be held in the above captioned matter at the Robert J. Dole Federal Courthouse in Kansas City, Kansas.

## **JURY DEMAND**

Plaintiff respectfully demands a jury trial on all issues so triable.

                                              Respectfully submitted,

Dated: September 11, 2017          **CREDIT LAW CENTER, LLC**

                                              By: *Keith N. Williston*
                                              Keith N. Williston KS #78645
                                              4041 NE Lakewood Way, Suite 200
                                              Lee's Summit, MO 64064
                                              Tele:   (816) 246-7800
                                              Fax:    (855) 523-5905
                                              KeithW@creditlawcenter.com

                                              **Attorney for Plaintiff**